WR-81,581-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/28/2015 1:46:19 PM
Accepted 4/28/2015 2:22:43 PM
ABEL ACOSTA
CLERK

CAUSE NO. WR-81,581-01

| | | |
|---|---|---|
| EX PARTE | § | IN THE COURT OF RECEIVED<br>COURT OF CRIMINAL APPEALS<br>4/28/2015<br>ABEL ACOSTA, CLERK |
| | § | |
| | § | CRIMINAL APPEALS |
| | § | |
| DEMONTRELL MILLER | § | AUSTIN, TEXAS |

---

**STATE'S RESPONSE TO APPLICANT'S MOTION FOR REHEARING**

---

TO THE HONORABLE JUDGES:

**COMES NOW THE STATE OF TEXAS,** by and through her Assistant Criminal District Attorney, and in opposition to Applicant's motion for rehearing respectfully states the following to the Court based on its information and belief:

## I.   HISTORY OF THE CASE

The Applicant, Demontrell Miller, was indicted in Cause No. 241-1251-08, filed on August 14, 2008, in the 241st District Court of Smith County, Texas, with the offense of Capital Murder. In August through November of 2009, a jury was selected and after hearing evidence and argument of counsel, found Applicant guilty of capital murder. Pursuant to the jury's subsequent answers to the special punishment issues, the trial court sentenced Applicant to death.

Applicant filed notice of appeal, and on May 23, 2012, this Court affirmed Applicant's conviction and sentence. *Miller v. State*, No. AP-76,270, 2012 Tex. Crim. App. Unpub. LEXIS 549 (Tex.Crim.App. May 23, 2012).

On January 10, 2012, Applicant filed his first application for habeas relief under Art. 11.071 of the Code of Criminal Procedure. On April 15, 2015, this Court denied relief based upon the findings of the trial court. *Miller v. State*, No. WR-81,581-01 (Tex.Crim.App. April 15, 2015).

## II. APPLICANT'S MOTION

Applicant argues in his motion for rehearing that this Court should reconsider its denial of his writ application for three reasons. (Mot. rehearing at 4-8). However, there is no merit to these claims for the following reasons:

a.      First, Applicant complains that the Court should have remanded the case back for a hearing on his allegation that "thirty-three of Applicant's friends and family members" were improperly excluded from the courtroom during the trial. This is denied as this Court and the trial court both found there was no merit under the record of this case.

Nevertheless, Applicant continues to assert his dubious claim that "thirty-three" people were subpoenaed by the State but were never called to testify. (Mot. for Rehearing at 5). This is inapposite to the record as Applicant's list of these person's included a Mr. Frederick Sewell [sic] and Ms. Angela Montgomery. *Id.* Mr. Frederick Suell clearly testified in the guilt/innocence phase for the State. (RR 44: 305-30). And, Ms. Angela Montgomery just as clearly testified for the State during the

punishment phase. (RR 54: 184-209). Consequently, there were actually *thirty-one* people who were sworn-in as witnesses for the State who did not testify, and not thirty-three people as sworn to by Applicant's writ attorneys. (Writ App. at 136-37 - Affidavits of Mr. David Schulman and Mr. John Jasuta).

In any event, Applicant argued in his writ application that because these individuals were not called to testify after being sworn in, the record in this case "shows a subtle yet intentional State targeting of Applicant's family members and other supporters for exclusion from the courtroom. . ." (Writ App. at 18).

Furthermore, in support of this claim that all of the thirty-plus individuals were "family members . . . and other supporters," Applicant offered boilerplate affidavits from merely eight people.[1] And, with the exception of Applicant's mother, *absolutely none* of the other affiants claimed a familial relationship to Applicant in their respective affidavits. While each did swear under oath that they "had no evidence to give but was a supporter of [Applicant] and wished to attend the trial to show support," the record does not carry that claim. It was shown in the State's writ response, supported by several references to the record, that it was not true that each of these individuals had "no evidence to give." (State's Suppl. Answer at 70-78).

---

[1] (1) Julia Jordan Williams, (2) Devontae Jordon, (3) Tikara Pinson, (4) Metria Pinson, (5) LaTonya Miller, (6) Dedtrick Miller, (7) Dexter Jordan, and (8) Gary Ates.

Moreover, the record shows that these eight people were properly excluded after being designated as witnesses for the State and the witness rule was invoked. TEX. R. EVID. Rule 614. *See* (RR 43: 5-10) (Court informing trial spectators that the witness rule had been invoked). Rule 614 provides for the exclusion of witnesses from the courtroom during trial. The purpose of the witness rule is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex.Crim.App. 2005); *State v. Saylor*, 319 S.W.3d 704, 709-10 (Tex. App. - Dallas 2009, *pet. ref'd.*). Once the witness rule is invoked, witnesses are instructed by the trial court that they may not converse with one another or with any other person about the case, except by permission from the court. TEX. CODE CRIM. PROC. ANN. Art. 36.06 (Vernon 2009); *Saylor*, 319 S.W.3d at 710. Further, the trial court must exclude witnesses from the courtroom during the testimony of other witnesses. TEX. R. EVID. Rule 614; *Saylor*, 319 S.W.3d at 710.

Applicant did not argue, or provide any evidence in his writ application, that any person whom he alleged was excluded from his trial was not a potential witness who had been placed under the rule for that reason. And, the record contains evidence that each of the eight persons supplying an affidavit in support of Applicant had experiences or knowledge which made them potential witnesses - which was why the State had them under subpoena in the first place. It is clear from the record that each

of the eight people named by Applicant under his first ground possessed information that indicated that they were potential witnesses for either the guilt/innocence or the punishment phase of Applicant's trial.

Consequently, the State had a good-faith basis for seeking to request the rule be applied to these eight individuals under Rule 614 of the Rules of Evidence. Rule 614 is clearly intended to provide a fair trial and on its face mandates that potential witnesses be ordered to remain outside of the courtroom while other witnesses are testifying. TEX. R. EVID. Rule 614. Applicant has provided this Court with no authority that stands for the proposition that his right to a public trial trumps a rule of evidence intended to guarantee a fair trial to both parties, particularly where the only reason the individuals named by Applicant were excluded was because they were in fact potential witnesses.

And, if the State was maliciously intending to keep Applicant's family and friends away from his trial by placing these witnesses under the rule as he alleged, that strategy failed miserably. The record references to the courtroom being filled with Applicant's supporters and family are in direct opposition to this claim. (RR 53: 175-76; RR 56: 83; RR 57: 62; RR 59: 141). Applicant's trial attorneys likewise have sworn that the courtroom in which Applicant's trial took place was "filled to capacity" during the trial and that "many of the people present were friends and

family members of Applicant." (Affidavit of A. M. Thompson, Jr. at 4; Affidavit of Ms. La Juanda Lacy at 3, 5).

Consequently, Applicant's claim that he was denied a "public" trial is totally adverse to the record which is full of evidence that his trial was public and attended by many of his friends or family members. Furthermore, Applicant did not allege how the outcome of trial would have been different simply because these eight persons were sitting in the courtroom instead in the hallway outside the courtroom. As such, Applicant clearly failed in his habeas burden and this Court rightfully found no reason to grant habeas relief under his first ground.

b.      Under a second ground, Applicant urged that trial counsel was ineffective for for assisting "the State's effort to improperly invoke the Rule," or "took no steps to prevent the State from doing so." (Mot. Rehearing at 5). This is denied. Once again, Applicant failed to show that his allegation under his first ground had any merit. Consequently, there is no merit to his claim that his trial attorneys were ineffective for failing to make a frivolous objection to the State's invocation of the Rule.

c.      Under his third ground, Applicant argued that he was denied effective assistance of counsel during the punishment phase where counsel failed to conduct a "meaningful mitigation investigation." According to Applicant, he provided the trial court with "numerous affidavits and a substantial amount of documentary evidence"

in support of this claim. (Mot. Rehearing at 7). Thus, the trial court and this Court, both had that evidence to consider before denying habeas relief under this ground.

It should be noted that Applicant's trial attorney's presented twenty witnesses at the punishment phase of the trial, whereas the State presented only eleven. (Writ App. at 37). Applicant argues that the State was well-prepared in presenting its eleven witnesses, but that his trial attorneys were somehow not prepared when they presented almost double that number of witnesses. Similarly, both of Applicant's trial attorneys presented affidavits to the trial court which specifically denied that they did not have a punishment phase strategy. (Affidavit of A. M. Thompson, Jr. at 7; Affidavit of Ms. La Juanda Lacy at 7-8).

An ineffective assistance claim has two components: Applicant must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish deficient performance, Applicant must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.*, at 688. Applicant has not made such a showing under his third ground for relief where he has not established that his attorneys were unreasonable in their preparation.

In his motion for rehearing, Applicant offers three opinions for the proposition that he was entitled to relief under his third ground, however each is easily

distinguishable from the facts of the instant case, or otherwise does not support Applicant's third ground.

In *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed. 2d 471, the Supreme Court found trial counsel ineffective where the record showed that counsel failed to uncover and present evidence in the punishment phase of the severe privation and abuse in the first six years of the defendant's life while in the custody of his alcoholic, absentee mother, physical torment, sexual molestation, repeated rape during subsequent years in foster care, a period of homelessness, and diminished mental capacities. *Wiggins*, 539 U.S. at 525-26. By contrast, Applicant complained that the jury did not know that he suffered a knee injury while playing college football and had bad migraine headaches during his childhood. The two situations are hardly comparable.

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L. Ed. 2d 389 (2000), the Supreme Court found trial counsel was ineffective where the defense team did not even begin to prepare for that the punishment phase until a week before the trial. *Id.* at 395. They also failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' "nightmarish" childhood, not because of any strategic calculation, but because counsel incorrectly thought that state law barred access to such records. *Id.* at 395. The Court concluded that, had they done

so, the jury would have learned that Williams' parents had been imprisoned for the criminal neglect of Williams and his siblings, that Williams had been severely and repeatedly beaten by his father, that he was committed to the custody of the social services bureau for two years during his parents' incarceration, and then, after his parents were released from prison, had been returned to his parents' custody. *Id.*

Again, the kind of evidence not presented to the jury in *Williams* is a far cry from Applicant's claim of having childhood migraines and a football knee injury.

Finally, in *Coble v. Dretke*, 444 F.3d 345 (5th Cir. 2006), the 5th Circuit Court denied the petitioner's assertion that his trial counsel were ineffective in the punishment phase, finding that "Coble's attempts to analogize *Williams* and *Wiggins* fail because counsel is not required to 'investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.'" *Coble* 444 F.3d at 356 *citing Wiggins*, 539 U.S. at 533.[2]

More importantly, in this case counsel complied with the Texas State Bar's recommendation for capital defense and had Applicant evaluated by an expert forensic psychologist and had a mitigation expert employed as part of the defense team. These experts reviewed the case and made their professional recommendation

---

[2] For the Court's information, *Coble* was subsequently reversed on other grounds, although the 5th Circuit Court re-affirmed its finding that trial counsel were not ineffective in the punishment phase. *Coble v. Quarterman*, 496 F.3d 430 (5th Cir. 2007).

to trial counsel. Notably, *Applicant failed to present even one instance where the advice of his trial team experts was ignored by trial counsel.* It is certainly reasonable for trial counsel to rely upon the advice they receive from experts hired for just that purpose.

The law does not require that trial counsel be flawless or that he must look under every stone for evidence of mitigation. *See, e.g., Strickland*, 466 U.S., at 699 (concluding that counsel could "reasonably surmise . . . that character and psychological evidence would be of little help"); *Burger v. Kemp*, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (concluding counsel's investigation was reasonable because he interviewed all witnesses brought to his attention, discovering little that was helpful and much that was harmful); *Darden v. Wainwright*, 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (concluding that counsel engaged in extensive preparation and that the decision to present a mitigation case would have resulted in the jury hearing evidence that petitioner had been convicted of violent crimes and spent much of his life in jail).

Applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and there exists a presumption of sound trial strategy unless rebutted by the record. *Busby v.*

*State*, 990 S.W.2d 263, 269 (Tex.Crim.App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690. In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id*. at 696.

In this case, counsel complied with the Texas State Bar guidelines for capital representation in assembling a defense team of experts. They prepared and presented twenty witnesses in mitigation at the sentencing phase, including expert mitigation evidence. The mere facts that Applicant may have had migraines during his childhood and was injured playing college football, if mitigating at all, would certainly not outweigh the aggravating evidence of the offense and Applicant's assaultive or aggressive conduct both in the free world and while confined. The trial court correctly found no merit in Applicant's third ground. Similarly, this Court was also correct in finding no merit as well in the same ground.

## III. PRAYER

Wherefore, premises considered, the State respectfully requests that the Honorable Court refuse to reconsider its opinion in this case regarding Applicant's grounds for relief.

Respectfully submitted

Michael J. West, SBN: 21203300
Assistant Criminal District Attorney
Smith County, Texas
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)
mwest@smith-county.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, the undersigned attorney certifies that the word count for this document is 2,505 words as calculated by Corel WordPerfect X6.

Michael J. West, SBN: 21203300
Assistant Criminal District Attorney
Smith County, Texas
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)

## CERTIFICATE OF SERVICE

On **4/28/15** , at true and complete copy of this instrument was served on Applicant's attorney of record via electronic filing.

Michael J. West, SBN: 21203300
Assistant Criminal District Attorney
Smith County, Texas
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)